UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 17-11472 |
| JOHN D. CHESTEEN, JR., | SECTION "B" |
| DEBTOR | CHAPTER 13 |

## MEMORANDUM OPINION

This matter came before the court on December 6, 2017 on the debtor's objection to the Internal Revenue Service ("IRS") proof of claim (P-23). After reviewing the parties' briefs, the court holds that the debtor's objection is sustained. The $695.00 exaction charged to the debtor is more properly characterized as a penalty, not a tax, and as such is not entitled to priority treatment under § 507(a)(8) of the Bankruptcy Code.

### I. Background Facts

The facts of this matter are not in dispute. The sole issue presented is whether an IRS exaction for failure to purchase health insurance in accordance with the Affordable Care Act ("ACA") individual mandate is a tax entitled to priority status under § 507(a)(8) or a penalty not entitled to priority status under the Bankruptcy Code.

On June 8, 2017 the debtor filed for relief under Chapter 13 of the Bankruptcy Code. (P-1). The debtor scheduled a priority claim in his bankruptcy petition to the IRS in the amount of $5,800.00 based on the debtor's estimate of the amounts he owed the IRS for his 2015 and 2016 taxes. The debtor's subsequently amended his bankruptcy schedules to reflect a priority amount of $5,100.10, and the debtor's first amended plan provides for $5,100.10 as the priority portion of the IRS claim. The IRS filed a proof of claim on June 22, 2017 seeking $15,248.38 in priority debt; filed an amended proof of claim on June 26, 2017 listing $11,682.66 in priority debt; amended a third time on July 19,

1

2017 to claim $5,100.10 in priority debt; and amended a fourth and final time on July 27, 2017 to claim $5,795.10 in priority debt. On its Form 410 of the final amended proof of claim, the IRS listed the additional $695.00 as an "excise tax." In its response to the debtor's objection to its proof of claim, the IRS describes this "excise tax" as the debtor's "shared responsibility payment liability [arising] under Internal Revenue Code § 5000A" for failure to maintain health insurance in 2016. (P-37 at p. 1). The court heard oral arguments on the debtor's objection to the IRS proof of claim on December 6, 2017.

## II. Legal Analysis

Section 507 of the Bankruptcy Code sets out the statutory framework for determining whether a claim is entitled to priority status.[1] Specifically, § 507(a)(8)(E)(i) states in pertinent part that a governmental unit's allowed unsecured claim has priority,

> "only to the extent that such claims are for— an excise tax on— a transaction occurring before the date of filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of filing of the petition."

11 U.S.C. § 507(a)(8)(E)(i). A statute's characterization of an obligation as a "tax" is not controlling, for purposes of establishing priority under the Bankruptcy Code.[2] Rather, a bankruptcy court must look to the substance of the statute to determine whether the obligation bears the characteristics of a tax.[3] In the context of the Bankruptcy Code's priority scheme, "a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the Government."[4] Thus, in order to determine

---

[1] See 11 U.S.C. §507(a)(8)(A-F).
[2] Although the United States Supreme Court in National Federation of Independent Business v. Sebelius, 567 U.S. 519 (2012), held that the individual mandate is a "tax" for constitutional purposes, which seemingly falls within the ambit of § 507(a)(8)(A), this court must look beyond that ruling. See also In re Bradford, 534 B.R. 839, 844 (Bankr. M.D. Ga. 2015).
[3] In re Perry, 521 B.R. 370, 375 (Bankr. N.D. Ala. 2014); 11 U.S.C. §§ 507(a)(8), 523(a)(1)(A).
[4] In re Bradford, 534 B.R. 839, 845-46 (Bankr. M.D. Ga. 2015) (citing United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 224 (1996)).

whether the individual mandate of the ACA is a "tax" granted priority in the context of § 507(a)(8) or a "penalty," the court must decide whether the primary, or dominant, purpose of the individual mandate or the "shared responsibility payment" is to support the government or to punish or discourage certain conduct.[5]

In *CF & I,* the Supreme Court's approach to determining whether a particular liability arising under I.R.C. § 4971(a) was a tax focused on (1) determining whether the exaction meets the general description of a tax and (2) whether it possesses other "tax characteristics" such that the exaction operates as a tax (as distinct from a debt or penalty) for the purpose of setting the priority of a claim under the bankruptcy laws.[6]

The Supreme Court in *CF & I* emphasized the distinction between a penalty and a neutral exaction, stating "a tax is an enforced contribution to provide for the support of government; a penalty, as the word is here used, is an exaction imposed by statute as punishment for an unlawful act."[7] The Court went on to note that "if the concept of penalty means anything, it means punishment for an unlawful act or commission."[8] When an exaction evinces a patently punitive function, it must be treated as imposing a penalty, not authorizing a tax.[9] Nonetheless, an exaction which has a deterrent effect does not necessarily make the exaction a penalty.[10]

Under the reasoning of *CF & I,* the requisite analysis is whether the exaction is more like a penalty or more like a tax. That is, it must be determined whether the exaction evince more tax features

---

[5] *In re Bradford*, 534 B.R. 839, 846 (Bankr. M.D. Ga. 2015).
[6] *518 U.S. at 220.*
[7] *Id. at 224.*
[8] *Id.; but see* United States v. Sotelo, 436 U.S. 268, 275 (1942) (Holding exaction's "essential character" controls, in determining whether exaction is a tax for bankruptcy purposes).
[9] *Id. at 226.*
[10] *See* Sonzinsky v. United States, 300 U.S. 506, 513 (1937) (Holding that a levy on the sale of firearms described as a tax and passed by Congress's taxing power was in fact a tax and noting that "a tax is not any less a tax because it has a regulatory effect").

3

than non-tax features. This analysis is necessarily muddled because of the overlap between the two categories. If an exaction is labeled a sanction, a fine, or a forfeiture, it can more readily be classified as a penalty and thus not a tax motivated primarily by revenue raising concerns.[11] However, even if a tax is imposed upon a subclass of taxpayers rather than the public in general, this does not necessarily mean that the exaction is a penalty.[12]

The IRS urges the Court to consider the similarities between the individual mandate penalty and trust fund recovery penalties, which have been classified as non-dischargeable priority taxes for bankruptcy purposes.[13] The individual mandate penalty at issue here is plainly different from the trust fund "penalty" in *United States v. Sotelo* because it is an exaction designed to deter conduct, not to financially support the government.

In *Sotelo*, a debtor was found to be liable under I.R.C. § 6672 for a "penalty" after he failed to pay to the government employment taxes which he had previously withheld from his employees.[14] In finding that the liability, which originally was deemed a penalty, was actually a tax, the court concluded that "the [] liability was not imposed for a failure on the part of [debtor] to collect taxes, but was rather imposed for his failure to pay over taxes" after he collected them.[15] The debtor's failure to pay over the already collected tax monies represented a pecuniary loss to the government and was thus held to be a tax despite the "penalty" moniker.

Applying the principles of *CF & I* to the case at bar, it is apparent that the ACA individual mandate is a penalty designed to deter citizens from living without health insurance. Under the ACA,

---

[11] <u>Department of Revenue of Montana v. Kurth Ranch</u>, 511 U.S. 767, 778 (1994)(Holding that "tax" equal to eight times the market value of drugs in a prior possession conviction was punitive).
[12] *See e.g. In re Hardee,* 137 F.3d 337, 342 (5th Cir.1998) (the increased interest for a period of two years imposed on underpaying taxpayers is interest and not a penalty).
[13] *See* <u>United States v. Sotelo</u>, 436 U.S. 268, 275 (1978) (Holding that "responsible person" liability under I.R.C. § 6672, although labeled a penalty, was actually a tax liability that could not be discharged in bankruptcy).
[14] *Id.* at 273.
[15] *Id.* at 274.

if an individual does not maintain health insurance, the "only consequence is that he must make an additional payment to the IRS when he pays his taxes."[16] Failure to make the ACA individual mandate payment does not result in any of the typical consequences that result from non-payment of taxes, e.g. wage garnishments, tax liens, etc. Rather, an individual who fails to make the ACA individual mandate payment is penalized by having the exaction deducted out of future tax returns.[17]

### III. Conclusion

Congress itself labeled the ACA individual mandate a "penalty" and not a tax. The relevant statute, 26 U.S.C. §5000A, refers to the ACA individual mandate as a "penalty" eighteen times; not once does it refer to the exaction as a "tax." Thus, it cannot be said that the ACA individual mandate is an exaction imposed for the purpose of supporting the government. Congress's primary, or dominant, purpose of imposing the individual mandate of the ACA was not to support or fund the government fiscally, but to discourage Americans from living without health insurance coverage.[18] Therefore it is not an exaction imposed "for the purpose of supporting the Government," and so it is not a "tax" within the meaning of § 507(a)(8).[19] An exaction not enacted for the primary purpose of fiscally supporting the government, is a penalty that should not be entitled to priority as "tax" claims.[20] Accordingly, because the individual mandate is a penalty, and not a "tax" within the meaning of

---

[16] *In re* Bradford, 534 *B.R. 839 at 854.* ("if an individual does not maintain health insurance, ... he must make an additional payment to the IRS when he pays his taxes.").

[17] *If you don't have health insurance: How much you'll pay,* https://www.healthcare.gov/fees/fee-for-not-being-covered/ (last visited February 1, 2018).

[18] Congress did not make failing to purchase health insurance an unlawful act, so in order to justify the constitutionality of the ACA individual mandate the Supreme Court ruled it was a tax. *See* Sebelius, 567 U.S. 519. However, the bankruptcy court is unconvinced that the narrow ruling on the constitutional issue extends to the priority scheme of the Bankruptcy Code.

[19] *Id. at 845;* In re Cassidy, 983 F.2d 161 (10th Cir. 1992) (Holding that IRS' ten percent assessment — labelled a "tax" — on premature withdrawal from pension plan funds was "nonpecuniary loss penalty" and thus not entitled to priority in bankruptcy).

[20] *See* In re Marcucci, 256 B.R 685 (D. N.J. 2000) (finding that a motor vehicle surcharge was a penalty, not a tax, because it was designed to deter poor driving habits).

507(a)(8), the IRS's $695.00 claim is not entitled to priority status. The debtor's objection to the IRS proof of claim is sustained.

New Orleans, Louisiana, February 9, 2018.

                                                         _____
                                                         Jerry A. Brown
                                                         U.S. Bankruptcy Judge